**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| AUTOMOTIVE FINANCE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. 1:10cv1407 |
| | ) |
| | ) |
| EEE AUTO SALES, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Defendants Enayet Rashid, Fatana Aziz and Venus Financial, Inc., by counsel, respectfully submit this memorandum in opposition to the plaintiff's motion for a preliminary injunction. (Doc. 53.)

**BACKGROUND**

The following facts are pertinent to the plaintiff's instant motion.[1]  Plaintiff is a floor plan automotive finance company. Defendant Venus Financial, Inc. ("Venus") finances the purchase of vehicles by retail customers. (Decl. of Fatana Aziz, ¶ 5.)  Plaintiff sues defendant Venus alleging Venus is a guarantor of the obligations of defendant automobile dealerships EEE Auto Sales, Inc., EEE of Fairfax, LLC, EEE Automotive, Inc., and EEE of Sterling, Inc. (collectively, the "Dealerships") under two written guarantees.  Amend. Compl., ¶¶ 29 and 30.  The alleged

---

[1] Defendants refer the Court to their motion to compel discovery (Doc. 45) or their more recently filed memorandum in opposition to plaintiff's motion to strike and for a protective order, for a summary of the background of this case.

1

guarantees are attached to the amended complaint as Exhibits 4 and 5. (Docs. 39-4 and 39-5.) Plaintiff alleges Venus is obligated to pay debts owed to the plaintiff by the Dealerships and is in breach of the guaranty agreements for failing to do so.  Amend. Compl., ¶¶ 51 and 52.  The amended complaint seeks a money judgment against Venus "for an amount to be proven at trial, but not less than $6,620,423.14." (Amend. Compl., prayer for relief, sec. B.) The amended complaint does not allege that the plaintiff holds any security interest in the property of Venus, nor does it seek or allege grounds for equitable relief against that defendant.

The plaintiff filed its original complaint[2] in this matter on December 13, 2010.  (Doc. 1.) In or about February of 2011, the plaintiff began contacting customers of Venus through a company called Vehicle Acceptance Corporation ("VAC"), who demanded that those customers pay VAC any amounts they owed to Venus.  (Decl. of Fatana Aziz, ¶ 6.)  Venus has never had any relationship with VAC and was unaware of any legal basis under which VAC might be demanding payment from Venus' customers of obligations owed to Venus.  (*Id.*)  When Venus learned of this activity, it asked the undersigned to contact counsel for the plaintiff to determine whether VAC's actions were undertaken on behalf of the plaintiff.  In a telephone conversation shortly thereafter, plaintiff's counsel advised Defendants' counsel that he had no knowledge of any such action by VAC or whether that action was in any way connected to the plaintiff.  Then, on or about February 18, 2010, plaintiff produced the documents attached in its instant motion as Exhibits 1-A and 1-B (Doc. 53-1).  According to the plaintiff, those documents were signed on

---

[2] The allegations of the original complaint against Venus were substantially the same as those now found in the amended complaint.

November 2, 2010 by Venus.[3] (Doc. 53-1.) The Collateral Security Agreement and Pledge is undated. The Power of Attorney is dated November 2, 2010.  Fatana Aziz is the president of Venus but has no recollection of ever signing either document.  (Decl. of Fatana Aziz, ¶ 7.)

On November 2, 2010, both Ms. Aziz and her husband, Mr. Rashid, were asked to sign a number of copies of the "Forbearance Agreement" identified in the amended complaint as Exhibit 6. But neither the Collateral Security Agreement and Pledge nor the Power of Attorney was brought to Ms. Aziz's attention in any manner on November 2, 2010, and she was unaware of their existence until they were recently produced by the plaintiff as described above.  (*Id*.) She is convinced that if she signed the documents, her signature was procured by trick.  (Decl. of Fatana Aziz, ¶ 8.)

On or about, March 3, 2011, counsel for the Defendants wrote a letter to VAC demanding that it discontinue its attempts to collect Venus' receivables. (Doc. 53-2.)  On March 8, 2011, plaintiff's counsel wrote a letter in reply that admitted the plaintiff hired VAC to collect Venus' receivables, asserted rights under the Collateral Security Agreement and Pledge, and threatened to "bring the issue to the attention of the Court" unless Venus and its counsel permitted the plaintiff to continue to collect Venus' receivables.  The plaintiff's instant motion for a temporary injunction against defendants Venus, Aziz and Rashid (collectively "the Defendants") was filed March 15, 2011.  For the reasons expressed below, Defendants urge the Court to deny the plaintiff's motion.

---

[3] Doc. 53-1 includes a declaration of Jerome Bosl, who states that he is "Senior Collections Manager" for the plaintiff and that "[o]n November 2, 2010, Venus executed a Collateral Security Agreement and Pledge and Power of Attorney in favor of AFC." The declaration does not state how Mr. Bosl knows that, nor does the declaration aver that the facts contained in it are based on Mr. Bosl's firsthand knowledge.

## <u>APPLICABLE LEGAL STANDARD</u>

"Preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc*., 245 F.3d 335, 339 (4th Cir. 2001).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 129 S.Ct. 365 (2008).  All four requirements of *Winter* must be satisfied.  *Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342 (4th Cir. 2009) (finding that *Winter* rejects the sliding scale application of these factors, which previously permitted a court to award a preliminary injunction where the "flexible interplay" of those factors on balance weighed in favor of such relief.)  Under *Winter*, each factor "must be satisfied as articulated." *Id*. at 347.

"[T]he Supreme Court in *Winter*, recognizing that a preliminary injunction affords relief before trial, requires that the plaintiff make a clear showing that it will likely succeed on the merits at trial. *Id*. at 347.  Previously, the Fourth Circuit Court of Appeals "instructed that the likelihood-of-success requirement be considered, if at all, only after a balancing of hardships is conducted and then only under the relaxed standard of showing that "grave or serious questions are presented" for litigation. *Id*. (citing *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir. 1977).)  Thus the *Winter* requirement that the plaintiff clearly demonstrate that it will likely succeed on the merits is far stricter than the former requirement under *Blackwelder* that the plaintiff demonstrate "only a grave or serious question for litigation." *Id.* at 347.

4

Second, *Winter* requires that the plaintiff make a clear showing that it is likely to be irreparably harmed absent preliminary relief, rather than "only that the harm to the plaintiff outweighs the harm to the defendant." *Id.* Third, in *Winter*, the Supreme Court emphasized the public interest requirement, stating, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S.Ct. at 376-77.

Where an injunction is sought, the movant has the burden of establishing that each of these factors supports the grant of the injunction, and the district judge "is required to make specific findings concerning each of the four factors in his decision, findings which are the product of reasoned application of the four factors held to be necessary prerequisites to the grant of preliminary relief." *Tiffany v. Forbes Custom Boats, Inc*., 959 F.2d 232 (Table), 1992 WL 67358 at *6 (4th Cir. 1992)(citations omitted).

Moreover, in the Fourth Circuit there is a distinction in treatment between a motion for preliminary injunctive relief to maintain the status quo and one to provide mandatory relief, especially relief which in effect operates as deciding the case in favor of the movant. *Tiffany*, 1992 WL 67358, at *6.   In *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir.1980), the Court of Appeals explained the difference this way:

> "The authority of the district court judge to issue a preliminary injunction, especially a mandatory one should be sparingly exercised. Mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief."

Because the court's view in *Wetzel* "conforms to the views of other circuits," the Fourth Circuit frequently finds guidance in decisions by other circuits in articulating the standard for a

mandatory preliminary injunction. *Tiffany*, 1992 WL 67358 at *6.  So, for instance, *Tiffany* cited

with approval a decision of the Tenth Circuit, wherein that court observed:

> "[T]he following types of preliminary injunctions are disfavored and they
> require that the movant satisfy an even heavier burden of showing that the
> four factors listed above weigh heavily and compellingly in movant's favor
> before such an injunction may be issued: (1) a preliminary injunction that
> disturbs the status quo; (2) a preliminary injunction that is mandatory as
> opposed to prohibitory; and (3) a preliminary injunction that affords the
> movant substantially all the relief he may recover at the conclusion of a full
> trial on the merits."

*Tiffany*, 1992 WL 67358 at *6 (citing *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1099

(10th Cir.1991)); see also *Citizens Concerned for the Separation of Church and State v. City and

County of Denver,* 628 F.2d 1289, 1299 (10th Cir. 1980), cert. denied, 452 U.S. 963, 101 S.Ct.

3114, 69 L.Ed.2d 975 (1981) (requiring a showing of compelling circumstances to justify the

imposition of preliminary injunctive relief that was mandatory and which disturbed the status

quo); *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (noting that because a

preliminary injunction that alters the status quo is "particularly disfavored" the movant must

make a strong showing of entitlement.)

    To obtain mandatory relief, the likelihood of success on the merits must be shown clearly

and convincingly. See *Tiffany*, 1992 WL 67358 at *6. Thus, "if there is doubt as to the

probability of plaintiff's ultimate success," a request for preliminary mandatory relief "must be

denied." *Id.*

    But in order for a court to grant *any* relief to a plaintiff, particularly equitable injunctive

relief, the grounds for such relief must be expressed in the complaint. The Fourth Circuit Court

of Appeals has made clear that the only way to raise new claims is through amendment of the

complaint. A plaintiff thus may not introduce a new claim by way of motion.  *Wahi v.*

*Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009) (citing *Barclay White*

*Skanska, Inc. v. Battelle Mem'l Inst.,* 262 Fed.Appx. 556, 563 (4th Cir. 2008) (unpublished)),

cert. denied, 130 S.Ct. 1140 (2010); see also *Tucker v. Union of Needletrades, Indus., & Textile*

*Emps.*, 407 F.3d 784, 788 (6th Cir. 2005); *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312,

1315 (11th Cir. 2004); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); *Fisher v.*

*Metro. Life Ins. Co*., 895 F.2d 1073, 1078 (5th Cir. 1990).

## ARGUMENT

1.   **Plaintiff is not entitled to any relief under the Collateral Security Agreement or Power of Attorney  because they are not pled in the amended complaint nor is any demand for equitable relief under them demanded against Venus in the amended complaint.**

As a matter preliminary to any analysis under the standards applicable to injunctive relief,

the plaintiff is not entitled to any relief on the basis of contracts that are not pled in the amended

complaint – particularly the extraordinary remedy of injunctive relief.  *Wahi,* 562 F.3d  at  617.

See also *Yetiv v. Hall*, 2005 WL 19500 (5th Cir. 2005)(observing "[plaintiffs] cannot rely on an

ever-expanding body of claims. They were allowed to amend their complaint, and are limited to

the claims set forth in the live second amended complaint.")

 The plaintiff's instant motion raises for the first time new claims under the Collateral

Security Agreement or Power of Attorney that are simply not properly before this Court.

Additionally, the amended complaint does not seek any relief against Venus other than a money

judgment (Amend. Compl., prayer for relief, sec. B) based on breaches of *other* agreements.

(Amend. Compl., ¶¶ 29-30, 51-52.)  Thus, the complaint should be read to be limited to seeking

money damages on other contracts that do not provide a basis for the extraordinary remedy of

injunctive relief.  See *General Elec. Capital Corp. v. Dream Tours, Inc.,* 2010 WL 2817171

7

(D.Md. 2010).

This Court's inherent equity power of injunction under Fed. R. Civ. P. 65 may only be invoked to ensure compliance with relief *ultimately sought* by the pleadings. While "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character *as that which may be granted finally*," it must be directed against action which would ultimately have been subject to injunction by final decree." *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 220, 65 S.Ct. 1130, 1134, 89 L.Ed. 1566 (1945)(emphasis added); see also  *U.S. v. Cohen*, 152 F.3d 321, 41 Fed.R.Serv.3d 1176 (4th Cir. 1999)(quoting *De Beers,* 325 U.S. at 220.) In both *Cohen* and *DeBeers*, as here, the fundamental issue was whether the Court should come to the aid of a creditor who sought pre-judgment relief in the form of an injunction over a putative debtor's assets, absent some claim to a form of relief that will ultimately be aided by the coercive power of the Court. Such relief is generally unavailable is an ordinary creditor's suit, where, as here, ultimately a mere money judgment is sought. Finding that the district court erred in relying upon its "inherent equitable powers" to enter a pre-judgment injunction freezing a defendant's assets in such a case, and quoting once again from *De Beers,* 325 U.S. at 222, 65 S.Ct. 1130, the Fourth Circuit Court of Appeals observed that otherwise:

> "[e]very suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree."

*Cohen*, 152 F.3d at 324.  Nor does Fed. R. Civ. P. 65 in and of itself provide the Court with authority to enter a preliminary injunction in this case, absent some well-pled basis for injunctive relief as an ultimate result in the case. "Rather, it regulates the issuance of injunctions otherwise

authorized." *Id.*, 152 F.3d at 324 (citing *Kemp v. Peterson,* 940 F.2d 110 (4th Cir.1991).) Indeed, the U.S. Supreme Court more recently weighed in on that issue, finding that a preliminary injunction under Rule 65 sought by a creditor should not be issued where the creditor's pleading does not state a cause of action for equitable relief:

> "A rule of procedure which allowed any prowling creditor, before his claim was definitely established by judgment, and without reference to the character of his demand, to file a bill to discover assets, or to impeach transfers, or interfere with the business affairs of the alleged debtor, would manifestly be susceptible of the grossest abuse. A more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants. (quoting Wait, Fraudulent Conveyances § 73, at 110-111.)

> The requirement that the creditor obtain a prior judgment is a fundamental protection in debtor-creditor law-rendered all the more important in our federal system by the debtor's right to a jury trial on the legal claim. There are other factors which likewise give us pause: The remedy sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance. Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?"

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 330-331, 119 S.Ct. 1961, 1973-1974 (1999).

Here, the plaintiff, without any claim against Venus that might entitle the plaintiff to equitable relief in a final order, asks this Court to confer upon the plaintiff a right to collect Venus' assets before any judgment has been entered or any trial conducted, effectively pre-judging the case and awarding through a preliminary injunction even more relief than that to which the plaintiff would be entitled as a judgment creditor. After all, as the Court is *Groupo Mexicano* points out, "[w]hy go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?"

In fact, the plaintiff has offered no substantive authority from which this Court may

award a preliminary injunction.  Indeed the plaintiff's pre-judgment remedy, if any, is found in Code of Virginia § 8.01-533:

> "If any person has a claim, legal or equitable, to (i) any specific personal property, (ii) any debt, including rent, whether the debt is due and payable or not, (iii) damages for breach of any contract, express or implied, or (iv) damages for a wrong, or for a judgment for which no supersedeas or other appeal bond has been posted, he may sue out an attachment therefor on any one or more of the grounds stated in § 8.01-534."

Code of Virginia § 8.01-534 in turn sets out a number of grounds upon which a pre-judgment attachment may be ordered – when properly pled and proved. (Conspicuously absent among those grounds is a creditor's claim that it might eventually be entitled to a money judgment.)  For these reasons alone, the plaintiff's motion for a preliminary injunction should be denied.

**2.      Plaintiff cannot establish a likelihood of success on the merits.**

Leaving aside the absence of any foundation in its complaint for equitable relief against Venus, the first of the four requirements under *Winter* are that "the plaintiff make a clear showing that it will likely succeed on the merits at trial." *Winter*, 129 S.Ct. at 347. Moreover, here the plaintiff seeks a preliminary injunction that disturbs the status quo and  is mandatory (in that it would divert assets of Venus to the plaintiff and would afford the plaintiff substantially all the relief to which it would be entitled if it prevailed in a full trial on the merits.)  Thus, to obtain that relief, the likelihood of success on the merits must be shown by clear and convincing evidence. See *Tiffany*, 1992 WL 67358 at *6.  The plaintiff's evidentiary support falls woefully short of that standard.

a.   <u>Venus did not assent to the subject agreements</u>.

First, the equitable relief plaintiff seeks is premised on a security interest purported to have been granted by Venus on November 2, 2010 under the Collateral Security Agreement and

Pledge identified in the plaintiff's instant motion.  While the plaintiff alleges that document was signed by Venus, Fatana Aziz, who is the president of Venus, denies any awareness of the existence of that document until it was recently produced by the plaintiff.  (Decl. of Fatana Aziz, ¶ 7.)  Her declaration further describes how she believes she might have been tricked into signing the Collateral Security Agreement and Pledge, if indeed she did sign it.  She further attests that she would not have signed it had she been aware of it or understood its implications. (Decl. of Fatana Aziz, ¶¶ 7 and 8.)

An enforceable contract requires mutual assent. "It is elementary that mutuality of assent – the meeting of the minds of the parties – is an essential element of all contracts."  *Phillips v. Mazyck*, 273 Va. 630, 643 S.E.2d 172 (2007) (citations omitted). While assent is often manifested by a signature, a signature procured by fraud or under mistake of fact vitiates such assent. *Duggan v. Krevonick,* 169 Va. 57, 192 S.E. 737 (1937); *Audio Fidelity v. Pension Benefit Guaranty Corp.*, 624 F.2d 513, 517-18 (4th Cir. 1980) (court of equity may reform a document in instances where there has been a mutual mistake of fact or where the mistake of one party was accompanied by the other party's fraud or other inequitable conduct.) See, also, *Temple v. Virginia Auto Mut. Ins. Co.*, 181 Va. 561, 569, 25 S.E.2d 268 (1943); *Shenandoah Valley R. Co. v. Dunlop*, 86 Va. 346, 351-52, 10 S.E. 239 (1889).

On the facts within the record to this point, assuming Ms. Aziz indeed signed the Collateral Security Agreement and Pledge, there is a genuine issue of fact as to whether she did so knowing what she was signing, or whether the plaintiff acted in a manner intended to conceal such knowledge from her at the time. The declaration of plaintiff's credit manager, Mr. Bosl, does not state that he has direct knowledge of Ms. Aziz signing the document, nor does his

declaration offer any details of the circumstances surrounding her signature from which this Court might find that she in fact signed the document, or that she did so intending Venus to be bound by its terms. Mr. Bosl's declaration fails to offer facts from which this Court can find the clear and convincing evidence of such assent necessary to find that the plaintiff is likely to prevail on the merits of any claim under that document. To the contrary, the evidence suggests the plaintiff will not.

> b.  Venus received no consideration for the subject agreements.

It is fundamental that an enforceable contract must be supported by consideration. *Brewer v. First Nat. Bank of Danville*, 202 Va. 807, 120 S.E.2d 273 (1961). Consideration is a promise or a detriment bargained for in return for another's promise or performance. *Id.* There is substantial doubt here that Venus received any consideration from the plaintiff for the Collateral Security Agreement and Pledge or the Power of Attorney introduced by the plaintiff's motion. First, plaintiff offers no evidence of any value conferred upon Venus in return for the Collateral Security Agreement and Pledge or the Power of Attorney. Ms. Aziz, on the other hand, attests that Venus received no value for it. (Decl. of Fatana Aziz, ¶ 14.) To the extent the plaintiff asks the Court to find consideration in the Forbearance Agreement (which was executed the same day as the document now at issue here), the Court should decline to do so, because the Forbearance Agreement is wholly illusory, imposing no real obligation on the plaintiff.

The doctrine of mutuality of obligation is "one aspect of the rule that mutual promises constitute considerations for each other." *Turner v. Hall*, 128 Va. 247, 251, 104 S.E. 861, 863 (1920). The modern trend is to call a lack of mutuality of obligation a "lack of consideration because of the illusory or optional nature" of the promise. *Wexford Bancorp, L.L.C. v. Concept 1,*

*L.L.C.*, 66 Va. Cir. 72, 73 (Va.Cir.Ct. 2004).  In Virginia, in order for there to be a contract there must be an absolute mutuality of engagement so that each party is bound and has the right to hold the other party to the agreement. *JGB Indus. Inc., v. Simon-Telelect, Inc.,* 221 B.R. 176, 183 (E.D.Va.1998). Thus a "contract is 'illusory' and unenforceable if a promise is not binding on the promissor, and as a result the contract lacks mutuality of consideration. *Davis v. George Mason Univ.*, 395 F.Supp.2d 331, 337 (E.D.Va. 2005).  In *Davis* the district court found the subject document to be "an unenforceable illusory contract because it purports to promise specified performance, but the performance by [the defendant], the promissor, is entirely optional." *Id*. at 337.  So too here.  The plaintiff's promise to forbear under the Forbearance Agreement  was entirely optional.

A superficial reading of the Forbearance Agreement suggests the consideration given by the plaintiff was the promise to refrain from taking legal action during the "forbearance period," which is defined in that document as the period commencing on the "Effective date" and ending by one of the "Termination Events" identified in section 3 of the document. (See Amend. Compl. Ex. 6, ¶¶ 2 and 5.)   The latest date the forbearance period would end was December 15, 2010. *Id.*  But the "Effective Date" of the agreement was defined by two conditions: (a) execution of two originals of the agreement itself and (b) execution of "other documents which [the plaintiff] may reasonably request.) (Amend. Compl. Ex. 6, ¶ 3)  Thus, to begin, the plaintiff was wholly in control of the "Effective Date" of the agreement by virtue of its right to delay it through its "reasonable request" for "other documents."

What's more, under paragraph 4 of the Forbearance Agreement, plaintiff's duty to forbear was made subject to 22 "conditions." At least 10 of those conditions – conditions (e), (f),

(g), (h), (i), (j), (m), (n), (o), and (p) – require the Defendants to provide various "other documents" to the plaintiff, and in one case requires the Defendants to do so daily (see, e.g., subsection (m).)  Thus, plaintiff was in a position to delay the Effective Date of the agreement indefinitely, and certainly through its absolute termination date of December 15, 2010, merely by demanding "other documents" through that date.  Additionally, in the case of subsections (e), (f), and (g) of paragraph 4, the plaintiff's obligation to forbear was "conditioned" on the Defendants providing "all documents deemed necessary" to accomplish the ends described in those subparagraphs.

Thus, through this combination of the right to both delay the Effective Date of the agreement or to declare by fiat any one of a number of conditions unmet, the plaintiff had no real duty to forbear at all, and its promise to do so was illusory.  Moreover, among the many recitals in the agreement, on page 2 the Defendants "acknowledge that the Loan Documents are in default." Yet in paragraph 5(a) of the document (defining "Terminating Events"), the first "event" that would terminate the plaintiff's duty to forbear was "Borrowers fail to comply with any terms or conditions in this Agreement or the Loan Documents." Thus, upon execution of the Forbearance Agreement, the Defendants acknowledged "that the Loan Documents are in default," whereupon the plaintiff's duty to forbear was terminable under  paragraph 5(a).

Additionally, the document itself is vague as to what exactly the plaintiff agreed to forbear from doing.  Under paragraph 2 of the document, the plaintiff agreed to forbear from "initiating or prosecuting" any "Collection Action," which is defined further in the same paragraph to mean "solely judicial actions by AFC to attempt to collect the Obligations from the Borrowers" but "does not include . . . filing of  . . . pleadings . . . or other documents."  Such a

"promise" to forbear is ambiguous at best.  The document was drafted solely by the plaintiff. (Decl. of Fatana Aziz, ¶ 11.)  Thus, any ambiguity must be construed against plaintiff, *Mahoney v. NationsBank of Virginia, N.A.*, 249 Va. 216, 455 S.E.2d 5 (1995), and resolving that ambiguity in favor of the Defendants leads to the conclusion the right to file "pleadings" means the plaintiff was not bound to forbear at all.

Indeed, the plaintiff dropped any pretense to being bound by the document when it filed pleadings in this case on December 13, 2010, during the period of time it ostensibly agreed not to do so. Plaintiff filed suit despite that the Defendants had fully performed under the Forbearance Agreement to that date and the last payment wasn't yet due.[4] (Decl. of Fatana Aziz, ¶ 13.)

This Court may also find from the evidence that all of the documents apparently signed by the Defendants on November 2, 2010 are unconscionable, unenforceable, and should be rescinded.  "Existing Virginia law can and should be applied to revoke *any* contract which results from fraud or the sort of overwhelming economic power which can render an agreement unconscionable. *Saturn Distribution Corp. v. Williams*, 905 F.2d 719, 727 (4th Cir. 1990) (emphasis supplied by court).  Indeed, in Virginia, "an inequitable and unconscionable bargain has been defined to be 'one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other.' The inequality must be so gross as to shock the conscience." *Management Enterprises, Inc. v. Thorncroft Co., Inc.,* 243 Va. 469, 416 S.E.2d 229 (1992)(quoting *Smyth Brothers v. Beresford*, 128 Va. 137, 104 S.E. 371 (1920).) The Forbearance Agreement in this case indeed shocks the conscience.  It strips the Defendants of virtually every conceivable right or defense, works a surrender of virtually all of their property

---

[4] Plaintiff has refused to specifically identify the breaches of the Forbearance Agreement it claims triggered its right to file suit before December 15, 2010.  (See defendant Rashid's motion to compel, Doc. 45, Ex. 1.)

of any consequence, deprives them of their constitutional right to a jury trial, contains declarations against their interests, and gives them nothing in return.  It was signed without the benefit of legal counsel, and was induced by fraud.  (Decl. of Fatana Aziz, ¶ 11.)   If ever an agreement could be said to shock the conscience by its fundamental inequity, the Forbearance Agreement is it.  It is an oppressive document devoid of promise. Indeed "no man in his senses" would sign it unless under "delusion." These Defendants were induced into executing it by a combination of false threats and false promises, as they recount in detail in the second defense raised in their amended complaint, and as Ms. Aziz describes in her declaration. The evidence does not suggest this plaintiff is "likely to prevail" in its attempt to enforce that document.  If it is rescinded by this Court, doing so will, for this reason too, leave the Collateral Security Agreement and Pledge unenforceable for lack of consideration.

Finally, the Collateral Security Agreement and Pledge is unsigned by the plaintiff, although the document itself provides for the plaintiff's signature. Where the manner of acceptance is prescribed, compliance with the prescription must follow if the offeror is to be bound. *Sport Systems, Inc. v. Kettler & Scott, Inc.*, 1994 WL 1031237 (1994) (quoting Restatement (Second) of Contracts ' 60 (1981)); see also *Hewitt v. Hutter*, 406 F.Supp. 976 (D.C.Va. 1975).  Thus, a manifestation of assent by the plaintiff required by the plaintiff's own document is absent, further casting doubt on the enforceability of the Collateral Security Agreement and Pledge.

     c.    <u>The security interest in the Collateral Security Agreement and Pledge did not attach under the UCC.</u>

The Collateral Security Agreement and Pledge purports to confer upon the plaintiff a

16

security interest in (essentially all) Venus' property.  Under Virginia law, a security interest does not attach unless (a) the debtor has signed security agreement describing the collateral, (b) value has been given for the agreement, and (c) the debtor has rights in the collateral. Code of Virginia § 8.9A-203; see also *In re Johnson*, 1995, 179 B.R. 800 (1995).  Once again, there is no evidence of value given to Venus in return for the Collateral Security Agreement and Pledge.  And again, because no value was given by the plaintiff in return for the Forbearance Agreement, that document could not have provided the value necessary for the purported security interest to attach. Thus, the security interest claimed under the Collateral Security Agreement and Pledge never attached under § 8.9A-203 and is unenforceable.

For these reasons, the Court should find that the likelihood plaintiff will prevail on the merits of its new claim as set forth in its motion is not "clearly and convincingly" likely, and the plaintiff's motion for a temporary injunction on that unpled claim should be denied.

**3.      Plaintiff will not suffer irreparable harm in the absence of preliminary relief.**

"The party seeking an injunction has the burden of making a clear showing of immediate irreparable injury if the injunction is not granted." *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812 (4th Cir.1991). "Preliminary injunctions are seldom granted due to the incomplete nature of the record." *Hughes Network Systems, Inc. v. InterDigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). They are also discouraged because they are subject to interlocutory appeal and thus "often lead to repetitive litigation." *Id.*

Furthermore, "[w]here the harm suffered by the moving party may be compensated by an award of money damages, courts generally have refused to find [the] harm irreparable." *Id.* at 694; see also *Helena Chemical Co. v. Huggins*, 2007 WL 1725242 (D.S.C. 2007) (denying

preliminary injunction to party alleging security interest in subject property, finding no danger of irreparable harm.) Because of these concerns, courts have insisted that the harm necessary to justify issuance of a preliminary injunction be *irreparable*. As the Fourth Circuit has observed, "[t]he Supreme Court has stated:

> 'The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'

*Hughes*, 17 F.3d at 694 (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974).)  Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally refuse to find that harm irreparable. See, e.g., *Morton v. Beyer*, 822 F.2d 364, 371-72 (3d Cir.1987); *Foxboro Co. v. Arabian Am. Oil Co.*, 805 F.2d 34, 36 (1st Cir.1986). "Monetary relief typically may be granted as easily at judgment as at a preliminary injunction hearing, and a party does not normally suffer irreparable harm simply because it has to win a final judgment on the merits to obtain monetary relief." *Hughes*, 17 F.3d at 694.

Although preliminary injunctions have in the past been issued occasionally "to protect the damages remedy," they are appropriate only where the defendant was "insolvent" and where its assets were "in danger of dissolution and depletion." *Hughes*, 17 F.3d at 694 (quoting *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 285, 61 S.Ct. 229, 231, 85 L.Ed. 189 (1940)). However, that basis of "irreparable harm" seems to now rest on dubious ground, given the U.S. Supreme Court's more recent decision in *Grupo Mexicano,* 527 U.S. at 331, 119 S.Ct. at 1974, where the Court cautioned against employing the extraordinary remedy of injunctive relief in

that very circumstance, because "[t]he requirement that the creditor obtain a prior judgment is a fundamental protection in debtor-creditor law – rendered all the more important in our federal system by the debtor's right to a jury trial on the legal claim."

Plaintiff offers absolutely no basis for this Court to find any likelihood of irreparable harm. First, it is questionable the plaintiff is now owed any money at all. As part of the Dealerships' bankruptcy, the plaintiff has already received, conservatively, approximately $4,800,000.00 in cash and vehicles. (Decl. of Fatana Aziz, ¶ 16.) The disposition of an additional $130,000.00 is pending before the bankruptcy court, and the amount demanded in this case fails to credit the Dealerships with sums paid between December 10, 2010 and when the Dealerships filed bankruptcy on December 17, 2010. *Id.* Depending on the sale price of the vehicles, the total amount the plaintiff has already received may exceed the total of its demand in this case. *Id.* Thus, the likelihood of irreparable injury is exceptionally low, because it is likely the plaintiff has already recovered or will soon recover all of what it claims, without an injunction, and even without a judgment.

Plaintiff's memorandum at page 4 alludes only to an unspecified and unsubstantiated risk that the Defendants will "secrete, convert, or otherwise dispose of the cash rather than making payments to AFC in accordance with their contractual obligations" and asserts that allowing Venus to continue to collect its receivables may "diminish the value of its security interest." Plaintiff offers no evidence of those assertions, nor does the plaintiff even suggest that Venus is insolvent.  On the other hand, Ms. Aziz attests that Venus is solvent and a going concern.  (Decl. of Fatana Aziz, ¶ 5.)  In fact, given the plaintiff's unfettered access to Venus' records (*Id.*) during the "forbearance period," any lack of evidence in support of the plaintiff's claim of potential

19

irreparable harm should weigh heavily against the plaintiff in the Court's consideration of that issue.

Additionally, according to the plaintiff's own motion, it has been in possession of the Collateral Security Agreement and Pledge since at least November 2, 2010. The fact that it neither sought the aid of the Court until now with respect to its alleged security interest, nor even saw fit to file suit to enforce the document, speaks to the absence of any risk of irreparable harm. Courts will consider a belated request for injunctive relief as evidence that no real irreparable harm is imminent. See *Dream Tours, Inc.,* 2010 WL 2817171 (D.Md. 2010).

The plaintiff offers no evidence that a money judgment is inadequate as matter of law. That, after all, is the remedy sought by the amended complaint against Venus, and indeed is the only ultimate remedy available to the plaintiff.  This Court should not turn Rule 65 into an "all purpose" pre-judgment creditor's remedy, even for creditors who claim a security interest in the property of their opposing party. *Grupo Mexicano,* 527 U.S. at 331, 119 S.Ct. at 1974. This plaintiff's dubious claim to a security interest over Venus' property hardly suggests the "compelling circumstances" the Fourth Circuit has said this Court must find to impose an injunction changing the status quo by depriving Venus of its ability to conduct its business. *Tiffany*, 1992 WL 67358 at *6.

**4.      The equities in this case favor Venus.**

The likelihood of harm to Venus far outweighs any harm to the plaintiff.  If Venus is unable to collect its receivables, it will be forced out of business.  (Decl. of Fatana Aziz, ¶ 15.) The circumstances of this case suggest substantial overreaching by the plaintiff in procuring the documents at issue. The Defendants, conversely, placed their trust and confidence in the

plaintiff. (Decl. of Fatana Aziz, ¶ 12.) The plaintiff thus now seeks equitable relief with unclean hands. The doctrine of unclean hands is a defense against a claim in equity. *ABF Freight System, Inc. v. N.L.R.B.,* 510 U.S. 317, 329-330, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994) ("The unclean hands doctrine closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . .") (internal quotations omitted).

In fact, it is Venus who is at risk of irreparable harm. The plaintiff now threatens to wrest control of Venus from its owners, just as it wrested control over the Dealerships. Venus has been a family-owned business for many years. "[M]oney damages cannot compensate for the loss of the opportunity to manage a business which has been under family control for decades." *Northgate Associates, LLLP v. NY Credit Funding I, LLC,* 2008 WL 3200630 at *7 (M.D.N.C. 2008) (quoting *Davis v. Rondina,* 741 F.Supp. 1115, 1125 (S.D.N.Y.1990) (holding that loss of role in management of company plaintiff helped build and for which she guaranteed substantial loans constitutes irreparable harm) and *Int'l Equity Inv., Inc. v. Opportunity Equity Partners Ltd.,* 441 F.Supp.2d 552, 563-64 (S.D.N.Y.2006)(finding irreparable injury in frustration, dilution or loss of control of a business).) The equities in this case overwhelmingly favor Venus.

**5.      Injunctive relief will not serve the public interest.**

The public interest here favors denying the plaintiff's motion for a preliminary injunction. The Supreme Court and Fourth Circuit Court of Appeals authorities cited above make clear that public policy considerations weigh heavily against permitting a (putative) secured creditor to use injunctive relief to obtain the ultimate relief sought in the case without ever going to trial or otherwise demonstrating the merits of its case. The plaintiff suggests that an injunction is necessary to protect Venus' customers from the "uncertainty and fear" that the plaintiff itself

21

has created by interfering with Venus' business.  The public interest would be best served by denying the plaintiff's motion and barring the plaintiff from further interfering with Venus' business.

## CONCLUSION

The plaintiff is not entitled to any relief on its new claim raised only by motion.  Even if that new claim were made part of the plaintiff's complaint, the ultimate relief sought is a money judgment. That fact is not changed by the possibility the plaintiff may have obtained a security interest in Venus' property. The pre-judgment remedy, if one is available to the plaintiff by virtue of that security interest, is attachment under Code of Virginia § 8.01-533.

To the extent this Court reaches the merits of the plaintiff's motion for a temporary injunction under the four elements necessary for such relief, this Court should find the plaintiff has not demonstrated a likelihood of prevailing on the merits.  Certainly plaintiff has not shown the merits of its new case so "clearly and convincingly" as to entitle it to an extraordinary pre-judgment remedy that would deliver to the plaintiff the ultimate relief it seeks, without the plaintiff ever proving its case at trial.

Nor has the plaintiff shown that a money judgment – the typical remedy in a case such as this – is somehow an inadequate remedy for this plaintiff. In fact, the record shows the plaintiff has already obtained most of the relief it seeks in this case through the bankruptcy court. The plaintiff's unsubstantiated claim of possible harm is simply insufficient.  The equities tip in favor of Venus, which will likely be destroyed by a temporary injunction before there is ever any trial on the merits. The public interest is best served in this case by sending a clear signal to overreaching creditors that there are limits beyond which this Court will not go merely in the

interest of aiding a putative creditor's attempting to collect a debt not yet reduced to judgment.

Dated:  March 22, 2011                               Respectfully submitted,

                                                     /s/ Thomas R. Passarelli
                                                     Thomas R. Passarelli (VSB # 24049)
                                                     Thomas R. Passarelli, P.C.
                                                     6731 Whittier Avenue, Suite A-300
                                                     McLean, Virginia  22101
                                                     Telephone (703) 448-8430
                                                     Facsimile (703) 893-7358

                                                     *Counsel for Defendants Enayet Rashid, Fatana Aziz
                                                     and Venus Financial, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of March, 2011 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

        Brian Paul Waagner, Esq.
        Husch Blackwell LLP
        750 17th Street, NW
        Suite 1000
        Washington, D.C. 20006

        Dylan G. Trache, Esq.
        Wiley Rein LLP
        7925 Jones Branch Drive, Suite 6200
        McLean, Virginia 22102

                      /s/ Thomas R. Passarelli
                      Thomas R. Passarelli