**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| AUTOMOTIVE FINANCE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. 1:10cv1407 |
| | ) |
| | ) |
| EEE AUTO SALES, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENFANTS' MEMORANDUM IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants Enayet Rashid, Fatana Aziz and Venus Financial, Inc., by counsel, respectfully submit this memorandum in opposition to the plaintiff's motion for summary judgment (Doc. 82.)

**BACKGROUND**

Plaintiff brings this action against four automobile dealership defendants, EEE Auto Sales, Inc., EEE of Fairfax, LLC, EEE Automotive, Inc., and EEE of Sterling, Inc. (collectively, the "Dealerships") asserting rights against those defendants under two alleged contracts each of which are identified in the complaint as a "Demand Promissory Note and Security Agreement" and are together identified as the "Security Agreements." Plaintiff sues defendant Venus Financial, Inc. ("Venus") and individual defendants Enayet Rashid ("Rashid") and Fatana Aziz ("Aziz") alleging breaches of two guaranty agreements identified in the complaint as the "Guaranties." Venus and the individual defendants are referred to herein as "the Defendants."

1

Plaintiff now moves for summary judgment against the Defendants for $3,156,149.00 under Count II of the amended complaint, which seeks a money judgment against those defendants "for an amount to be proven at trial, but not less than $6,620,423.14, plus accrued interest and attorneys' fees and costs." Amend. Compl. ¶¶ 49-54 and section B, prayer for relief. In the same motion, the plaintiff also moves for the enlargement of this Court's temporary injunction entered on March 25, 2011 to a permanent injunction. (The temporary injunction prohibits the Defendants from collecting defendant Venus' accounts receivable and granted the plaintiff the right to do so.)

Defendants oppose the plaintiff's motion for summary judgment because genuine issues of fact exists as to the terms of the contracts at issue, the measure of the plaintiff's damages, and the plaintiff's failure to mitigate its damages. The Defendants further oppose the motion because the plaintiff has failed to make discovery, thereby preventing the Defendants from fully developing their defenses in the case, and because as a matter of law the plaintiff is not entitled to some of the relief it requests. Specifically, with respect to the last point, the complaint makes no claim for injunctive relief against the Defendants, so the plaintiff is not entitled to a permanent injunction. And while the plaintiff seeks pre-judgment interest at the alleged contract rate of 15% per annum compounded daily, the plaintiff has not sought, nor is it entitled to, post-judgment interest at that rate. Any award of post-judgment interest accordingly should be limited to the statutory rate.

## **STANDARD OF REVIEW**

A party is entitled to summary judgment if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P.

56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The Court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir.2002).

When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick,* 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 196 (4th Cir.1997). Accordingly, in this case, this Court must view the evidence in a light most favorable to the Defendants.

## IMMATERIAL FACTS ASSERTED BY PLAINTIFF

Plaintiff asserts a number of facts in its motion that are not material to the plaintiff's cause of action against the Defendants under Count II of the complaint (which is the only count pertaining to these defendants.) Count II alleges breaches of guaranty agreements by the Defendants for failure to pay the obligations of the Dealerships to the plaintiff. As such, the material issues with respect to that claim are the same as any breach of contract claim. The elements of a breach of contract action in Virginia are: (1) a legally enforceable obligation of a defendant to the plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury

3

or damage to the plaintiff caused by the breach of obligation. *Ulloa v. QSP*, Inc., 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006).

Yet the plaintiff asserts several allegations of fact that are not material to either the enforceability of the guarantees at issue, to the alleged beaches of them, to the plaintiff's damages, or to any defenses to those elements of the plaintiff's contract claim. While a non-moving party general has the burden of coming forward with evidence demonstrating a material issue of fact, *Celotex*, no such burden exists with respect to *immaterial facts* alleged by the moving party, because only facts material to the elements of the plaintiff's claim are properly considered on a motion for summary judgment. *See* Fed. R. Civ. P. 56.

Thus, the Court should find the following facts alleged in the plaintiff's motion for summary judgment to be inapposite and immaterial to the matters placed at issue by Count II of the complaint, and that the Defendants bear no burden of coming forward with evidence demonstrating a genuine dispute with regard to them:

1. Paragraphs 1 and 11 of the plaintiff's statement of undisputed facts allege that either the Dealerships or the Defendants held funds "in trust" for the plaintiff or were trustees or fiduciaries of the plaintiff with respect to such funds. But there is no breach of fiduciary duty claim in this case, and a trust relationship is not an essential element of the plaintiff's claim.

2. The alleged security agreement signed by Venus described in paragraph 13 of the plaintiff's statement of undisputed facts is immaterial to the plaintiff's contract claim against the Defendants, because that claim depends not on that security agreement (which isn't even pled in the complaint) but on the alleged guaranty agreements.

3. The forbearance agreement described in paragraph 13 of the plaintiff's statement of undisputed facts is similarly immaterial to the plaintiff's contract claim under Count II. The forbearance agreement by its terms does not create any duty on the Defendants to pay the Dealerships' obligations to the plaintiff. Once again, the plaintiff's claim is based on the guarantees, not the forbearance agreement.

4.      The comment attributed to defendant Rashid described in paragraph 15 of the plaintiff's statement of undisputed facts that "during the weeks beginning November 29, 2010 and December 6, 2010" the Dealerships "would not be able to pay $500,000 to AFC by December 15, 2010" promised under the forbearance agreement is immaterial to the plaintiff's claim. Even assuming the forbearance agreement by the Dealerships is material and the Dealerships defaulted under it, the question is not whether Mr. Rashid predicted that default, but whether it in fact occurred, and whether the plaintiff suffered additional damage as a result of it.

5.      The Venus security agreement identified in paragraph 28 and 29 of the plaintiff's statement of undisputed facts is not properly at issue in this case. The plaintiff has not pled the agreement and the Defendants have not filed responsive pleadings as to it. Nor does complaint even seek relief based upon the security agreement. It is irrelevant to the plaintiff's claim under the guarantees alleged in the complaint and not properly at issue. It cannot now form the basis of relief on a motion for summary judgment.

## MATERIAL FACTS IN DISPUTE

1.      A genuine issue of material fact exists as to the allegations in paragraphs 2 and 5 of the plaintiff's statement of undisputed facts that the "previous agreements" identified in that paragraph have been superseded. Plaintiff offers no evidence to support that assertions, and the plaintiff has refused to even provide those agreements to the Defendants in discovery. *See* **Exhibit 1**, Rashid Second Decl., ¶ 4.

2.      A genuine issue of material fact exists as to the allegation in paragraph 12 of the plaintiff's statement of undisputed facts that the plaintiff made reasonable efforts to mitigate its alleged loss and that the forbearance agreement constituted a reasonable and prudent effort to mitigate loss. The plaintiff has failed to act reasonably to mitigate its losses. *See* Rashid Second Decl., ¶¶ 5 - 10.

3.      A genuine issue of material fact exists as to the allegation in paragraph 16 of the plaintiff's statement of undisputed facts that the Dealerships owed the plaintiff $6,620,423.14 as of December 10, 2010. The plaintiff has produced virtually no evidence of that amount other than a bald, unsupported assertion in a declaration by Jerome Bosl, an employee of the plaintiff. (*See* Doc. 83-1, Bosl Second Decl., ¶ 24.) The Defendants claim the amount did not exceed $5,789,313.50 on that date. Rashid Second Decl., ¶ 5.

4.    A genuine issue of material fact exists as to the balance owed by the Dealerships as alleged in paragraph 23 of the plaintiff's statement of undisputed facts, because the plaintiff has not come forward with any evidence substantiating its claim that the Dealerships owed $6,620,423.14 as of December 10, 2010 and the Defendants' evidence is that the amount did not exceed $5,789,313.50 on that date. Rashid Second Decl., ¶ 5.

5.    A genuine issue of material fact exists as to whether the plaintiff failed to mitigate its damages by refusing to accept periodic payments from the Dealerships, instead causing their liquidation and foreclosing any possibility of future payments from them. The evidence supports a conclusion that doing so proximately led to the deficiency now claimed by the plaintiff against the Defendants. *See* Rashid Second Decl., ¶¶ 5 - 10.

## ARGUMENT

**1.    The plaintiff's motion for summary judgment should be denied because there are genuine issues of material fact with respect to the terms of the contracts, the measure of the plaintiff's claim, and whether the plaintiff failed to mitigate its damages.**

   *a.    Plaintiff has failed to offer evidence in support of essential elements of its claim.*

A party seeking summary judgment has the burden of establishing that no genuine issue of material fact exists as to each element of the party's claim. "[A] complete failure of proof concerning an essential element" of the opposing party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986.) Here the plaintiff claims breaches of guaranty contracts by the Defendants under which the Defendants promised to pay amounts owed by the Dealerships to the plaintiff. The terms of those guarantees are thus material to the question of the Defendants' duties and to any alleged breach. Additionally, as alleged guarantors, the Defendants can only be liable to the plaintiff if and to the extent the Dealerships, as the primary obligors, are indebted to the plaintiff. The plaintiff's evidence in support of its motion is deficient with respect to the two critical issues of the terms of the agreements and the amount of the plaintiff's claim against the Dealerships.

First, the plaintiff admits that it has not produced a substantial number of contract documents between the parties. The plaintiff asserts, without offering any evidence, that only those contracts it has selected for production and that it has decided to rely upon are currently operative. Without any evidentiary support, the plaintiff merely offers a legal conclusion that the other contracts have been "superseded" by those the plaintiff now relies upon. Thus, the record in the case is that the plaintiff holds and has refused to produce 125 pages of contract documents executed by between the parties on that bald legal conclusion, and now moves for summary judgment on the contracts it has unilaterally decided are the only operative documents in the case.

Second, the plaintiff has offered no credible evidence supporting its assertion in its amended complaint[1] that the Dealerships owed the plaintiff $6,620,423.14 as of December 10, 2010. To support that element of the plaintiff's contract claim the plaintiff offers only an *unsupported assertion* by an employee of the plaintiff, Jerome Bosl, that the Dealerships owed that sum as of December 10, 2010, as alleged in the complaint. Nothing in Mr. Bosl's declaration, or in the attachments to it, or elsewhere in the record supports that assertion. In other words, the plaintiff has merely placed a number on a piece of paper, and then had an employee swear to its accuracy.

These failures of proof concerning two essential elements of the plaintiff's case necessarily render all other facts immaterial and compel a denial of the plaintiff's motion. See *Celotex*, 477 U.S. at 323.

*b. There is a genuine issue of fact as to whether the plaintiff made a reasonable effort to*

---

[1] See Doc. 38, Amend. Compl., ¶¶ 37 and 38.

*mitigate its damages.*

A genuine issue of fact exists as to whether the plaintiff mitigated its damages. Assuming Indiana law applies, in Indiana "[t]he affirmative defense of failure to mitigate damages has two elements, and as to both the defendant bears the burden of proof by a preponderance of the evidence. First, the defendant must prove that the plaintiff failed to exercise reasonable care to mitigate his or her post-injury damages. Second, the defendant must prove that the plaintiff's failure to exercise reasonable care caused the plaintiff to suffer an identifiable item of harm not attributable to the defendant's [ ] conduct." *Willis v. Westerfield,* 839 N.E.2d 1179, 1187 (Ind.2006).

Here the Defendants have come forward with evidence that the Dealerships were viable and could make the plaintiff whole as to its entire claim within a reasonable time through periodic payments. Rashid Second Decl. ¶¶ 6 - 7. The plaintiff's decision to take possession of substantially all of the Dealerships' inventory led to the bankruptcy of the Dealerships and ultimately to their liquidation. Rashid Second Decl. ¶ 8. As going concerns, the Dealerships represented a reasonable source of repayment for the plaintiff in mitigation of the plaintiff's damages. Rashid Second Decl. ¶¶ 6 -7. Having laid waste to that historically substantial and sustainable revenue stream, the plaintiff, by a necessity of its own creation, now demands the Dealerships' principals satisfy the plaintiff's claims. But the principals themselves depended on the Dealerships for income, as the plaintiff knew, and are now themselves without income as a result of the plaintiff's hasty and ill-advised liquidation of their family business. Rashid Second Decl. ¶ 9.

In fact, the plaintiff never seriously considered accepting the $50,000 monthly payments

offered by the Dealerships. The plaintiff refused to so much as to test the Dealerships' ability to make such payments for a brief period of, say, two or three months. *See* Rashid Second Decl. ¶ 7. The plaintiff was in a position to effect any changes to the Dealerships' business methods or cost structure to enhance the likelihood the Dealerships would be in a position to make periodic payments to the plaintiff. Rashid Second Decl. ¶ 6. Additionally, the plaintiff's decision to attempt to directly collect Venus' receivables with the aid of an injunction has been a dismal failure. Before the plaintiff's interference, Venus was yielding about $26,335 in revenue per month from those receivables. Rashid Second Decl. ¶ 10. Since then, the plaintiff has managed to collect a total of about $2,506.81.[2] *See* **Exhibit 2,** plaintiff's supplemental response to defendant Rashid's interrogatory 8.

The plaintiff was thus in a rare position of having both sufficient knowledge and control to test a repayment plan with little or no additional risk. The plaintiff knew too of the limited financial means of the individual defendants and should have appreciated the substantial risk of no recovery beyond what might be realized through a liquidation of the Dealerships. Even assuming the plaintiff is entitled to the $3,156,149.00 it now seeks, under the Dealerships' business plan (Rashid Second Decl., Exhibit 1) the plaintiff would have yielded that amount in at most 63 months. Rashid Second Decl. ¶ 7. It is likely that over time the monthly payments would have increased, shortening the repayment period. *Id.* Now the plaintiff stands to recover no portion of that sum.

In light of these circumstances, the plaintiff's decision to destroy the revenue stream

---

[2] Upon information and belief, the $23,387.98 figure cited in paragraph 19 of the plaintiff's statement of undisputed facts includes a repossessed vehicle.

represented by the Dealerships as going concerns was unreasonable, as was the plaintiff's decision to attempt the forcible collection of the Venus receivables.

There is thus substantial evidence supporting the conclusion that all of the plaintiff's presently claimed damages would have been mitigated by the Dealerships' periodic payments and from Venus had the plaintiff acted reasonably.  From this evidence the trier of fact may conclude that the plaintiff failed to exercise reasonable care when it set in motion the cascade of events that instead led to the Dealerships' liquidation and caused a loss of the Venus receivables, thereby destroying viable opportunities to mitigate its claimed losses. Those lost opportunities constitute identifiable items of harm not attributable to the Defendants.  At a minimum, a question of fact exists as to whether and to what extent the Dealerships would have been able to generate profits from which they could have satisfied the plaintiff's claims. (See, *Meineke Car Care Centers, Inc. v. RLB Holdings, LLC*, 2011 WL 1422900 *7 (4th Cir. 2011) (factual question at to how long party could have been kept operational and as to the amount of revenues and profits it would have generated during that period.)) For these reasons alone the plaintiff's motion for summary judgment should be denied.

> c. *The Court should deny the plaintiff's motion pursuant to Rule 56(f) because the plaintiff has failed to make discovery bearing on the terms of the contracts between the parties and probative of the mitigation of damages issue.*

On a motion for summary judgment, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Here the Defendants show by defendant Rashid's declaration that (1) 125 pages of

contract documents between the parties have been withheld in discovery and (2) he had discussions pertaining to a payment plan and changes to the operation of the Dealerships that would have mitigated the plaintiff's damages.

Regarding the first item, the plaintiff has refused to produce 125 pages of contract documents, claiming they were "superseded" by subsequent documents. But the plaintiff has the burden of proving the terms of its contract with the Defendants with reasonable certainty. *Ulloa,* 271 Va. At 79. Indiana law imposes the same burden. See *Collins v. McKinney,* 871 N.E.2d 363, 370 (Ind.Ct.App.2007). The plaintiff has heretofore[3] steadfastly refused to produce 125 pages of contract documents, claiming they were "superseded" by the documents the plaintiff's claims contain the only terms presently operative between the parties and that without them and further discovery the Defendants cannot present facts essential to their opposition to the plaintiff's summary judgment motion. But those documents by their express terms do not extinguish the earlier agreements.[4] Defendant Rashid's declaration shows that indeed earlier agreements were executed between the parties. Rashid Second Decl. ¶ 4. The Court should thus deny the plaintiff's motion under Rule 56(f) to permit the Defendants an opportunity to review those documents, and either conduct additional discovery based upon them and/or file a supplemental opposition to the plaintiff's motion to show how the documents bear upon the issues presented by the plaintiff's instant motion.

With respect to the second issue pertaining to mitigation, the plaintiff has withheld about

---

[3] During a hearing on defendant Rashid's motion to compel discovery held on May 31, 2011 the plaintiff agreed to provide those documents. The plaintiff has since advised the Defendants that the documents have been mailed.

[4] Paragraph 9.5 in each of the contracts identified in the amended complaint states that those contracts are an "amendment and restatement" of earlier agreements. That language suggests the earlier agreements remain operative and are in fact a part of the contracts at issue.

1296 documents under attorney-client and work product privilege claims. Most of those documents are correspondence among the plaintiff's employees, financial and accounting records, and correspondence with the Defendants, all of which were generated around the time the plaintiff was presented with an opportunity to mitigate its damages but rejected that opportunity. Conversely, virtually none of the records produced voluntarily by the plaintiff discuss any of those matters, such as the proposed payment plan or other business management decisions (such as closing one or more of the dealerships rather than all of them.)  The withheld documents are highly probative of the mitigation of damages issue, *regardless* of their contents. Either the records contain information probative of the reasonableness of the plaintiff's decision to act as it did, or they do not. If they do not, the absence of any discussion of mitigation alternatives in correspondence among the plaintiff's representatives, particularly in light of the Defendants' evidence of a mitigation opportunity, is itself probative of the plaintiff's failure to act reasonably toward mitigation of damages.

On March 11, 2011, the Defendants moved to compel discovery of the documents withheld under claims of privileged.  During the May 31, 2011 hearing on that motion, Magistrate Judge Jones said he intends to issue an order that the plaintiff's privilege log be amended as necessary to contain certain information required by the Court.  Judge Jones also ruled that the parties confer after the plaintiff produces an amended privilege log and, of necessary, that the parties brief the Court on any remaining issues regarding the plaintiff's privilege claims thereafter. Defendant Rashid's declaration attests to the need for those documents to support the Defendants' opposition to the instant motion based on the plaintiff's failure to mitigate damages.  Rashid Second Decl., ¶ 4. Accordingly, the Court should deny the

plaintiff's motion for summary judgment pursuant to Rule 56(f) pending resolution of this discovery issue, and permit the Defendants sufficient time to either propound additional discovery based upon those documents that may be produced and/or file a supplemental opposition to the instant motion should those documents indeed bear upon the issues presented by the motion.

**2.    Even if the plaintiff is entitled to judgment, the plaintiff is not entitled to post judgment interest at the contract rate and any interest award should be at the statutory rate.**

Federal law, rather than state law, governs the calculation of post-judgment interest in diversity cases. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614 (4th Cir. 1999) (citing *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir.1989).) Under 28 U.S.C.A. § 1961(a):

> "Interest shall be allowed on any money judgment in a civil case recovered in a district court . . .. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."

Parties may contractually agree to a different post-judgment rate, but that agreement must be expressed in "clear, unambiguous and unequivocal language ...." *Society of Lloyd's v. Reinhart,* 402 F.3d 982, 1004 (10th Cir.2005); *see also Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 101–02 (2d Cir.2004) (same); *U.S. ex rel. SCCB, Inc. v. P. Browne & Associates, Inc.,* 2010 WL 4644438, at 10 n. 10 (M.D.N.C. November 09, 2010). Conversely, where the parties fail to contract for a different rate, the statutory rate applies. *See Reinhart,* 402 F.3d at 1004.

Here the plaintiff's motion seeks pre-judgment interest at the contract rate but does not specifically demand post judgment interest.  To the extent the plaintiff intends to seek such

interest, the applicable rate should be the rate prescribed by statute.   As a matter of law the plaintiff is not entitled to post judgment interest at other than the statutory rate, because the plaintiff has not come forward with any evidence showing by "clear, unambiguous and unequivocal language" an agreement to a different rate. *Id.*

**3.      The plaintiff is not entitled to a permanent injunction because the plaintiff has an adequate remedy at law and has no sought injunctive relief in its complaint.**

The extraordinary remedy of injunctive relief is available only where a party has an inadequate remedy at law. *Johnson v. Collins,* 199 F.3d 710, 726 (4th Cir.1999). On March 25, 2011 over the Defendants' objections the Court entered a preliminary injunction barring the defendants from taking certain action in connection with the collection of defendant Venus' accounts receivable. As the defendants pointed out at the time, the amended complaint in the case seeks only a money judgment against the Defendants. There was not then and there is not now any basis in law for injunctive relief in this case, where the plaintiff's pleading merely seeks money damages on a commercial contract claim. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) (holding that an injunction freezing assets may not be entered in an action for damages where no lien or equitable interest in the assets is claimed).

Yet the plaintiff now seeks to enlarge the preliminary injunction in this case to a permanent injunction. A preliminary injunction is an equitable remedy meant to maintain the status quo until there can be a hearing on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834 (1981); *Kemp v. Peterson*, 940 F.2d 110 (4th Cir. 1991.) The purpose of the preliminary injunction will thus have been satisfied upon the entry of a final judgment. Accordingly, rather than enlarging the preliminary injunction to a permanent one, the

Court should dissolve it upon the entry of a final money judgment that accords the plaintiff all the relief it sought in its complaint.

Further, even if this Court correctly entered preliminary injunction to protect the plaintiff's damages remedy, the preliminary injunction will cease to serve any legitimate purpose once that remedy is in place. See *U.S. ex rel. Rahman v. Oncology Associates*, 198 F.3d 489, 496 (4th Cir. 1999). "This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets." *Id.* at 497. Accordingly, once "the ultimate relief requested in the lawsuit" has been granted in this case, the purpose of the injunction will cease, and the injunction should be dissolved.

Dated:  June 1, 2011                                Respectfully submitted,

                                                                     /s/ Thomas R. Passarelli
                                                                    Thomas R. Passarelli (VSB # 24049)
                                                                    Thomas R. Passarelli, P.C.
                                                                    6731 Whittier Avenue, Suite A-300
                                                                    McLean, Virginia 22101
                                                                    Telephone (703) 448-8430
                                                                    Facsimile (703) 893-7358

                                                                    *Counsel for Defendants Enayet Rashid, Fatana Aziz and Venus Financial, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of June, 2011 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Brian Paul Waagner, Esq.
Husch Blackwell LLP
750 17th Street, NW
Suite 1000
Washington, D.C. 20006

Dylan G. Trache, Esq.
Wiley Rein LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia 22102

/s/ Thomas R. Passarelli
Thomas R. Passarelli