IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AUTOMOTIVE FINANCE CORP.          )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     1:10cv1407(LMB/TRJ)
                                  )
EEE AUTO SALES, INC., et al.,     )
                                  )
          Defendants.             )

AUG 3 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MEMORANDUM OPINION

Before the Court is the plaintiff's Motion for Attorneys'
Fees and Costs [Dkt. No. 102], in which the plaintiff, Automotive
Finance Corporation, seeks an order awarding attorneys' fees and
costs in the amount of $473,422.35.  For the reasons stated
below, the Court will reduce the award at this time to
$213,760.50 in fees and $3,654.41 in costs, for a total of
$217,414.91.  An additional judgment in the amount of $217,414.91
will therefore be imposed jointly and severally against
defendants Venus Financial, Inc., Fatana Aziz, and Enayet Rashid
by an Order to be issued with this Memorandum Opinion.

This Court, however, cannot currently resolve the matter of
the reasonableness of the separate bankruptcy fees and costs, and
therefore will not direct that final judgment be entered pursuant
to Fed. R. Civ. P. 58 at this time.  To recover its fees and
costs relating to the separate bankruptcy proceedings, plaintiff
must first pursue and win recovery of those fees and costs before
the relevant bankruptcy court.  Alternatively, plaintiff may

simply forego its pursuit of those fees and costs and thereby obtain an immediate Rule 58 judgment from this Court.

## I.  Background

This civil action arises from a floor-plan financing arrangement involving several Northern Virginia used car dealerships.  Specifically, plaintiff Automotive Finance Corporation ("AFC"), an Indiana corporation that provides inventory financing for independent automobile dealers throughout the United States, entered into a floor-plan financing arrangement with defendant EEE Auto Sales, Inc., d/b/a EEE of Tyson, along with several related corporations (EEE of Fairfax, LLC; EEE Automotive, Inc., d/b/a EEE of Springfield; and EEE of Sterling, Inc.) (hereinafter collectively referred to as "EEE Auto Sales" or "the dealership defendants").  AFC's loans to EEE Auto Sales under that floor-plan financing arrangement were secured by a series of Promissory Notes and related agreements with the dealership defendants, and by several Guaranty Agreements with defendants Venus Financial, Inc. ("Venus Financial"), Enayet Rashid ("Rashid"), and Fatana Aziz ("Aziz") (hereinafter collectively referred to as "the Guarantors" or "the guarantor defendants").

On December 13, 2010, AFC filed the instant civil action against the dealership defendants and the Guarantors, alleging that they had breached the terms of their various agreements with

2

AFC.  See Dkt. No. 1 (Pl.'s Verified Compl.).  On December 17,
2010, all of the EEE Auto Sales defendants filed a suggestion of
bankruptcy, and this civil action was stayed as to those
defendants.  See Dkt. No. 17 (Dec. 20, 2010 Stay Order).  On
December 22, 2010, however, plaintiff notified the Court of its
intent to proceed against the remaining three defendants: Rashid,
Aziz, and Venus Financial.  See Dkt. No. 18.  On February 3,
2011, with leave of court, plaintiff filed a First Amended
Complaint, asserting claims for breach of guaranty against those
defendants and seeking monetary damages, accrued interest, and
attorneys' fees and costs.  See Dkt. No. 39 (Pl.'s First Amend.
Compl.).

     On June 28, 2011, after relatively extensive motions
practice - including several rounds of motions for preliminary
injunctions or temporary restraining orders, see, e.g., Dkt. Nos.
4, 5, and 52; various motions to dismiss, for summary judgment,
and to strike defendants' affirmative defenses, see Dkt. Nos. 24,
48, and 82; and several discovery-related motions to compel and
for protective orders, see Dkt. Nos. 45 and 48 - this Court
entered judgment in favor of the plaintiff.  See Dkt. No. 99
(June 28, 2011 Order).  Specifically, the Court dismissed all of
the defendants' affirmative defenses, id.; see also Dkt. No. 76,
granted AFC's Motion for Summary Judgment, see Dkt. No. 82, and
entered judgment, jointly and severally, against the guarantor
defendants, and in favor of AFC, in the amount of $3,156,149.00,

3

with post-judgment interest accruing at the Court's standard rate.  See Dkt. No. 99.

The only remaining issue to be resolved in this case is therefore the reasonableness of the plaintiff's claimed attorneys' fees.  In its Motion for Attorneys' Fees and Costs, AFC asserts a right to recover $473,422.35, based on the language of the two Demand Promissory Notes and Security Agreements at issue in this action, each of which contains an attorneys' fees provision in paragraph 9.15 calling for the recovery of fees of "not less than 15% of the outstanding Obligations where not prohibited by law."  See Mem. in Supp. of AFC's Mot. for Attorneys' Fees at 1-2.  In the alternative, AFC argues that it should be entitled to recover $393,261.90, which represents its actual attorneys' fees and costs, including $290,853.86 in fees and costs incurred by the law firm of Husch Blackwell LLP, and $102,408.04 in fees and costs incurred by the law firm of Taft Stettinius & Hollister LLP.  See id. at 3-5.

## II.  Legal Standards

The party requesting attorneys' fees and costs bears the burden of demonstrating the reasonableness of the fees that it seeks to recover.  Cook v. Andrews, 7 F. Supp. 2d 733 (E.D. Va. 1998) (Merhige, J.); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In calculating a reasonable fee, "[t]he most useful starting point" is the "lodestar" amount, which is determined by

4

multiplying the number of hours reasonably expended in the matter by a reasonable hourly rate. Eckerhart, 461 U.S. at 433; Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). When analyzing lodestar figures, "[p]roper documentation is . . . key," and fee claimants must therefore submit documentation reflecting "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity." EEOC v. Nutri/System, Inc., 685 F. Supp. 568, 573 (E.D. Va. 1988) (Ellis, J.).

The court may then subtract any hours that appear excessive, duplicative, or unnecessary, and may also reduce fees for hours spent on unsuccessful claims. Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 730 F. Supp. 2d 513 (E.D. Va. 2010) (Cacheris, J.) (requiring the party requesting attorneys' fees to exercise reasonable "billing judgment" with respect to the hours worked and the fees claimed); see also Zhang v. GC Servs., 537 F. Supp. 2d 805 (E.D. Va. 2008) (Dohnal, J.). Courts in this District use twelve factors, collectively known as the Johnson/Kimbrell factors, to evaluate the reasonableness of a petition for attorneys' fees and to make any necessary adjustments. Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the

outset of the litigation; (7) the time limitations
imposed by the client or circumstances; (8) the amount
in controversy and the results obtained; (9) the
experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and
length of the professional relationship between
attorney and client; and (12) attorneys' fees awards in
similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978);

see also Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-
19 (5th Cir. 1974).

The court need not address all twelve Kimbrell factors
independently, because "such considerations are usually subsumed
within the initial calculation of hours reasonably expended at a
reasonable hourly rate." Freeman v. Potter, No. 7:04cv276, 2006
WL 2631711, at *2 (W.D. Va. 2006) (citing Hensley, 461 U.S. at
434 n.9). Additionally, the court need not address in detail
each and every single factor. "Instead, the Court discusses
those factors that are relevant to its determination of the
reasonable amount of attorney[s'] fees to award in each
particular case." Kennedy v. A Touch of Patience, No. 2:10cv398,
— F. Supp. 2d —, 2011 WL 1549245, at *8 (E.D. Va. April 15, 2011)
(Davis, J.).

## III.  Discussion

In applying the Johnson/Kimbrell factors, the Court finds
that an attorneys' fees and costs award of $217,414.91 is
reasonable at this time.

6

### A. AFC is limited to recovering the reasonable attorneys' fees and costs that it actually incurred.

As a threshold matter, the Court rejects plaintiff's argument that it is entitled to a set amount of $473,422.35 in fees, independent of the substantive reasonableness of such a fee award. AFC bases that line of argument entirely on the language of the loan documents in this case, which contain the following provision regarding the recovery of attorneys' fees:

> **9.15** Attorneys' Fees Expenses and Costs. In addition to all other amounts payable hereunder by Dealer, Dealer agrees to reimburse [AFC] on demand for any and all attorneys' (including paralegals' and similar persons') fees *(not less than 15% of the outstanding Obligations where not prohibited by law)*, accountants', appraisers' fees, and all expenses and costs incurred in collecting or enforcing payment of the Obligations hereunder or in curing any default, including without limitation those fees and costs incurred (a) with or without suit; (b) in any appeal; (c) in any bankruptcy, insolvency or receivership proceeding; and (d) in any post-judgment collection proceedings, plus interest at the rate provided herein.

See Dkt. No. 83 (Mem. in Supp. of AFC's Mot. for Summ. J.), Ex. 1 at AFC1-00030 (Demand Promissory Note and Security Agreement) (emphasis added); see also id. at AFC1-00016 (Unconditional and Continuing Guaranty Agreement, providing that the guarantor defendants are liable for "all costs, expenses, and attorneys' fees incurred by [AFC] in the enforcement of this guaranty"). In particular, plaintiff argues that because paragraph 9.15 of the relevant Demand Promissory Note and Security Agreement purports to entitle AFC to attorneys' fees that are "not less than 15% of the outstanding Obligations," and because this Court

7

has entered summary judgment against the Guarantors in the amount of $3,156,149.00, then AFC must be entitled to attorneys' fees of at least $473,422.35, or 15% of that judgment.

That argument is appealing in its simplicity, but the central problem with plaintiff's contention is that it flies in the face of the applicable case law.  According to the choice of law provisions in paragraph 9.11 of the parties' Security Agreements, the agreements are to be construed and enforced according to "the substantive laws of the state of Indiana."  See id. at AFC1-000009.  Under Indiana law, as in Virginia, parties may of course contract around the default "American Rule," and may therefore shift the obligation to pay attorneys' fees by contract or mutual agreement.  See, e.g., Stewart v. TT Commercial One, LLC, 911 N.E.2d 51, 58 (Ind. Ct. App. 2009). However, Indiana courts will only enforce those fee-shifting agreements so long as they are not contrary to law or public policy, and any award of attorneys' fees must still be proven to be substantively reasonable.  See Bruno v. Wells Fargo Bank, N.A., 850 N.E.2d 940, 950 (Ind. Ct. App. 2006); Stewart, 911 N.E.2d at 59 ("Where the amount of the fee is not inconsequential there must be objective evidence of the nature of the legal services and the reasonableness of the fee.").

In fact, an Indiana appeals court has recently squarely held that contractual attorneys' fees provisions calling for a fee award based on a percentage of the amount of the plaintiff's

claim - in other words, fee provisions exactly like those in
paragraph 9.15 at issue here - are unenforceable as a general
matter and must instead be limited to the reasonable attorneys'
fees actually incurred by the moving party:

> [P]rovisions in promissory notes for the payment of
> attorney fees should not extend beyond reimbursing the
> holder of the note for the necessary attorney[s'] fees
> reasonably *and actually* incurred in vindicating the
> holder's collection rights by obtaining judgment on
> the note.

Corvee, Inc. v. French, 943 N.E.2d 844, 847 (Ind. App. 2011)

(quoting Smith v. Kendall, 477 N.E. 2d 953, 954 (Ind. Ct. App.

1985) and refusing to enforce an attorneys' fee provision of 40%

of the principal amount owed) (emphasis in original).

The Corvee court reasoned that contractual provisions
specifying particular percentages for attorneys' fees recovery
are "in the nature of a liquidated damages provision," and are
therefore unenforceable under Indiana law unless "the damages . .
. would be uncertain and difficult to ascertain," the stipulated
sum "fairly" compensates for the harm, and the party seeking
liquidated damages shows "a correlation between the liquidated
damages and actual damages . . . to assure that a sum charged may
fairly be attributed to the breach." Id. at 846-47. The Corvee
court then went on to state that attorneys' fees are rarely
"uncertain or difficult to ascertain," and that in any event,
Indiana law requires a party seeking attorneys' fees to
demonstrate that the fee sought is a reasonable one. Id.

The holding in <u>Corvee</u> makes good sense.  Indeed, to allow a party to recover more in an attorneys' fees award than it actually incurred in legal expenses would confer an unreasonable windfall on that party and would be fundamentally at odds with the basic principle that the party requesting fees bears the burden of proving that such fees are reasonable.  <u>See</u> <u>Hensley</u>, 461 U.S. at 433.  Moreover, and quite tellingly, plaintiff has been unable to cite a single Indiana case to the contrary.[1]

Instead, AFC simply seeks to distinguish <u>Corvee</u> based upon the difference between the 40% fee recovery sought in that case and the 15% fee provision in the instant action.  That is certainly a distinction, but it is a distinction without any meaningful difference.  The <u>Corvee</u> court did not hold that the contractual attorneys' fee provision at issue there was unenforceable only because the specific percentage involved was 40%, such that a 30%, 20%, or 15% fee provision might somehow be more reasonable.  Rather, the court held that in Indiana,

---

[1]  AFC has cited two Virginia cases, <u>NationsBank of Va., N.A. v. Jordache Venture Assoc.</u>, No. 2:92494, 1993 WL 724806 (E.D. Va. Aug. 4, 1993) (MacKenzie, J.), and <u>In re Bowden</u>, 326 B.R. 62 (Bankr. E.D. Va. 2005), in support of the proposition that percentage-based attorneys' fees provisions are enforceable without regard to the reasonableness of the fee.  However, Virginia law is irrelevant in this case because the choice of law provisions in the loan documents at issue here, which were drafted by AFC itself and upon which AFC has repeatedly relied, <u>see</u> Dkt. Nos. 49 at 3, n.1 and 83 at 9, explicitly require the application of *Indiana*, not Virginia, law.  In any event, neither <u>NationsBank</u> nor <u>Bowden</u> directly holds that contractual attorneys' fees provisions should be mechanically enforced without regard to whether the resulting fee award is reasonable.

percentage-based attorneys' fees provisions are all regarded as liquidated damages clauses, and will therefore almost invariably fail to pass muster, regardless of the specific percentage employed.   943 N.E.2d at 846-47.

In this case, as in <u>Corvee</u>, plaintiff's attorneys' fees are not uncertain or difficult to ascertain, and the use of a liquidated damages clause in *any* percentage would be "patently unreasonable."   <u>Id.</u> at 846.   Ultimately, therefore, under the relevant substantive law that this Court is required to apply, AFC is entitled to recover only those attorneys' fees and costs that it reasonably and actually incurred.   Yet AFC cannot demonstrate, nor does it even attempt to argue, that it has actually incurred $473,422.35 in attorneys' fees and expenses. Moreover, AFC cannot establish that such a sum, even if it had been incurred, would constitute a reasonable award.   The contractual attorneys' fees provision relied upon by the plaintiff is therefore unenforceable as a matter of law,[2] and AFC is only entitled to recoup the fees which it can prove that it actually and reasonably incurred.

---

[2]   Significantly, paragraph 9.15 itself states that the attorneys' fees provision is only applicable "where not prohibited by law."   Dkt. No. 83, Ex. 1 at AFC1-00030.   The clear Indiana case law disallowing such provisions, except in extremely limited circumstances, therefore functions as just such a legal prohibition.

**B. The fees and costs actually and reasonably incurred by AFC, and for which AFC is entitled to judgment at this time, total $217,414.91.**

The Court must now proceed to evaluate the reasonableness of the fees and costs that AFC claims that it actually incurred. Specifically, plaintiff alleges that it is entitled to $393,261.90 for fees and costs that were actually billed; of that sum, $290,853.86 was billed by Husch Blackwell LLP ("Husch Blackwell"), which primarily represented AFC in the instant action, while $102,408.04 was billed by Taft, Stettinius & Hollister LLP, which represented AFC in connection with the bankruptcy proceedings involving the four dealership defendants. See AFC's Mot. for Attorneys' Fees at Ex. 1 (summary of fees and costs).

### 1.   Bankruptcy fees and costs

At this time, the Court cannot award any of the fees and costs that AFC was charged for legal work performed in connection with the separate and distinct bankruptcy proceedings before the United States Bankruptcy Court for the Eastern District of Virginia. Although AFC is entitled to recover those fees from the guarantor defendants under the terms of its Guaranty Agreements, see, e.g., Dkt. No. 83 (Mem. in Supp. of AFC's Mot. for Summ. J.), Ex. 1 at AFC1-00016, the record in this case does not contain any evidence of the nature of that work, the degree of success achieved by the plaintiff, or the skill required to perform the services rendered. This Court also has no direct knowledge of the

12

bankruptcy proceedings from which to make a fair or just determination as to whether the fees sought are reasonable.

Moreover, the issue of the attorneys' fees sought by a creditor in a bankruptcy proceeding is a matter within the jurisdiction of the bankruptcy court, and such bankruptcy fee awards must be assessed by federal bankruptcy standards, rather than state law standards. See In re Korangy, 106 B.R. 82, 85 (Bankr. D. Md. 1989); see also Wonder Corp. of Am., 82 B.R. 186 (D. Conn. 1988). As such, the question of the reasonableness of the bankruptcy fees must be left to the sound discretion of the bankruptcy court, which actually adjudicated the legal issues involved with the EEE Auto Sales defendants' Chapter 7 bankruptcies. Because this Court was not involved in those bankruptcy proceedings, and in fact entered judgment only against the Guarantors, not against the dealership defendants, the Court will refrain from rendering judgment on the reasonableness of the bankruptcy fees. Accordingly, no portion of the $97,891.00 in fees or $4,517.04 in costs that were charged by Taft Stettinius & Hollister LLP, the law firm that exclusively represented AFC in connection with the bankruptcy proceedings, will be awarded at this time.

In light of the foregoing, the Court must now turn to an evaluation of the fees and costs charged by Husch Blackwell, which represented AFC both before this Court and in the bankruptcy proceedings. In its Motion for Attorneys' Fees, AFC unfortunately

13

did not disclose the amount of Husch Blackwell's fees attributable solely to this case, as opposed to those fees billed in connection with the bankruptcy proceedings.  Instead, the billing records submitted by the plaintiff simply commingle services rendered in relation to the defendant dealerships' bankruptcies with services rendered in this case, such that it is impossible to readily disaggregate the improperly included bankruptcy fees from the other, properly charged, fees.  See AFC's Mot. for Attorneys' Fees at Ex. 3 (Husch Blackwell billing records).

By this Court's estimate, the Husch Blackwell billing records contain approximately 90 entries, totaling almost $30,000.00 in fees, that relate in whole or in substantial part to the bankruptcy proceedings, rather than to the proceedings before this Court.  Id.[3]  That $30,000.00 represents approximately 10% of the $285,014.00 in total fees charged by Husch Blackwell.  However, the actual percentage of fees for work expended in connection with the bankruptcy proceedings is likely even higher, because many of the billing records merely contain cryptic references to "discussing strategy," "reviewing records," or "revising responses," without any associated description of the specific matter or case number involved.  See, e.g., id. at 20 ("Review

---

[3]   Those entries deal with the provision of a variety of legal services, from preparing and arguing substantive motions before the bankruptcy court, to coordinating and finalizing the sales of the dealership defendants' remaining collateral, to litigating the appropriateness of an attorneys' fees and costs award to Wiley Rein LLP, the debtors' bankruptcy counsel.

14

status and strategy with Brian Kenworthy"), 29 ("Revise response"), and 40 ("Review litigation strategy").

Without the benefit of more detailed billing descriptions, it is literally impossible to determine whether the Husch Blackwell attorneys were strategizing, reviewing, and revising matters relating to this action, or to the EEE Auto Sales bankruptcies. As such, the Court will draw the adverse inference that at least 15% of the $285,014.00 in fees charged by Husch Blackwell were associated with the bankruptcy proceedings, rather than this case, and will accordingly reduce the fee award by 15% at this time. As explained in more detail below, if AFC wishes to pursue the remaining 15% of its fees for Husch Blackwell's bankruptcy work, it must first do so through the bankruptcy courts.

Similarly, a review of Husch Blackwell's billing records reveals a number of charges for costs or expenses that are related solely to the EEE Auto Sales defendants' bankruptcy proceedings and are therefore unrecoverable at this time.[4]  See, e.g., AFC's Mot. for Attorneys' Fees, Ex. 3 at 32 (seeking $1,360.25 for

_____

[4]  The Guarantors argue that most of AFC's costs are unrecoverable because they do not fall within the specific categories enumerated in the taxation-of-costs statute, 12 U.S.C. § 1920.  See Defs.' Mem. in Opp. to Pl.'s Mot. for Attorneys' Fees at 19-20.  However, 12 U.S.C. § 1920 does not apply to the costs and expenses that may be recovered under a contractual fee-shifting clause, such as the clause in the parties' Guaranty Agreements providing that AFC may recover "all costs, expenses, and attorneys' fees incurred . . . in the enforcement of this guaranty."  See Dkt. No. 83 (Mem. in Supp. of AFC's Mot. for Summ. J.), Ex. 1 at AFC1-00016.  Accordingly, the Court will not limit the plaintiff's recovery of costs and expenses to the types of costs set forth in 12 U.S.C. § 1920.

"Travel Expenses - Brian Waagner Cost of Hearing Transcript before [Bankruptcy] Judge Mayer" and another $600.00 for "Travel Expenses - Brian Waagner Court fees incurred for filing Motion for Relief from Automatic Stay in 4 cases in U.S. Bankruptcy Court"), and 48 (charging $125.00 for "Witness Fee/Expenses" associated with the appearances of several witnesses "pursuant to LBR [Local Bankruptcy Rules] 9016-1(c)"). Once again, those costs cannot be awarded at this point because this Court has no way of knowing whether it was reasonable for AFC and its attorneys to incur those costs or not. This Court's best calculation is that $2,185.45 of the requested costs are attributable to the bankruptcy proceedings; that amount will therefore be subtracted from the $5,839.86 in total costs that AFC seeks, see AFC's Mot. for Attorneys' Fees at Ex. 1, resulting in a current costs award of $3,654.41.

It bears noting, however, that AFC is not entirely without recourse in recovering its outstanding attorneys' fees and costs associated with the bankruptcy proceedings. During oral argument on the instant motion, counsel for the plaintiff advised the Court that although AFC has not yet filed a motion for attorneys' fees with the bankruptcy court, it would still be able to file such a motion if it so chooses. Accordingly, if AFC wishes to recover its bankruptcy fees and costs from the guarantor defendants, it must first pursue those fees and costs against the dealership defendants in the bankruptcy proceedings, and then return to this

Court seeking indemnification of those costs by the Guarantors in accordance with the terms of the Guaranty Agreements.

To allow plaintiff an opportunity to file such a motion for bankruptcy fees, the Court will not enter final judgment against the guarantor defendants pursuant to Fed. R. Civ. P. 58 at this time.  If, however, AFC prefers to obtain a final Rule 58 judgment promptly, it may simply advise the Court in writing that it is foregoing further pursuit of its bankruptcy fees and costs.

### 2.  Lodestar calculations

Having eliminated the fees incurred during the bankruptcy proceedings, on the grounds that this Court is not currently in a position to evaluate the reasonableness of those fees, the Court must now evaluate the proper "lodestar," or the product of the hours billed and the hourly rates charged, for the work performed by Husch Blackwell in the proceedings before this Court.

As an initial matter, the Court finds that the hourly rates charged by Husch Blackwell are reasonable and commensurate with the prevailing rates in the Northern Virginia market.  See Plyler v. Evatt, 902 F.2d 273 (4th Cir. 1990).  Here, plaintiff has indicated that "Husch Blackwell bills AFC for its professional services on a fixed hourly rate" and that "[a]ttorney time is charged at $260 per hour, regardless of experience."  Mem. in Supp. of AFC's Mot. for Attorneys' Fees at 3.  The end result of that fixed, or "blended," hourly rate is that although the $260 per hour billing rate is slightly excessive for certain younger

associates who worked on this matter, any such excess is more than counterbalanced by the very low rates charged by the partners, many of whom have significant experience in commercial and creditors' rights litigation. See B.P. Prods. N. Am., Inc. v. Charles Stanley, 1:09cv1147 (E.D. Va. Sept. 1, 2010) (Brinkema, J.) (citing Grissom v. The Mills Corp., 549 F.3d 313, 320-23 (4th Cir. 2008) and finding reasonable market rates in Northern Virginia to be "\$335-380 for a partner with 18 or more years of experience, \$250 for an associate with five to seven years of experience, \$200 for an associate with two to three years of experience, and \$180 for an associate with one year of experience"); see also AFC's Mot. for Attorneys' Fees at Ex. 2 ¶¶ 1-2 (Decl. of Brian P. Waagner, a Husch Blackwell partner with 17 years of experience in federal civil litigation who has had a lead or supporting role in a number of cases in this District, "including several cases representing creditors seeking to enforce contractual commitments by guarantors or indemnitors"). For those reasons, the Court will not reduce any of the hourly rates charged.[5]

---

[5]  The guarantor defendants also ask this Court to reduce or eliminate the fees charged by paralegals and other para-professional staff at Husch Blackwell, on the grounds that their hourly billing rates were not adequately supported. However, the Court finds that the supplemental information provided by AFC regarding those individuals' levels of experience and expertise is sufficient to justify the approximately \$40,000.00 in fees (a mere 14% of the total fees) charged for their work in this case. See Reply Br. in Supp. of AFC's Mot. for Attorneys' Fees at Ex. 1 (Supplemental Decl. of Brian P. Waagner).

However, the Court will reduce some of the hours billed in this case to account for certain unnecessary or duplicative efforts.  In particular, the guarantor defendants properly point out that the plaintiff's decision to employ approximately 14 attorneys on this matter, from the law firm of Husch Blackwell alone, raises significant questions regarding unnecessary duplication of effort and the attorneys' failure to exercise adequate billing judgment.  Billing judgment is a significant factor in the lodestar analysis, see Hensley, 461 U.S. at 437, and Husch Blackwell's application of such extensive resources to this single civil action suggests possible inefficiencies in labor.  In fact, a review of the billing records reveals that they contain a number of duplicative entries, and that they are replete with time spent on tasks such as "coordination" with co-counsel and "review" of the work of others - tasks that might not have been necessary had the plaintiff simply employed fewer attorneys.  See, e.g., AFC's Mot. for Attorneys' Fees, Ex. 3 at 8 ("Review initial draft complaint"), 11 ("Coordinate reproduction and service of pleadings"), and 31 ("Review and make additional revisions to counts on guaranty").

To be sure, this was a relatively significant case in some respects, and the plaintiff did succeed in achieving a large damages award in excess of $3 million.  See Dkt. No. 99. Moreover, the guarantor defendants themselves complicated matters exponentially at every turn by filing incredibly broad discovery requests, see Dkt. No. 49 at Ex. 5; by asserting every affirmative

defense under the sun in their Amended Answer, see Dkt. No. 44,
all of which defenses were eventually dismissed by this Court, see
Dkt. Nos. 76 and 99; by interfering with AFC's efforts to collect
from Venus Financial's customers, thereby necessitating the filing
of yet another motion for a preliminary injunction, see Dkt. No.
52; and by taking an emergency, interlocutory appeal of that
preliminary injunction, only to later dismiss that appeal, see
Dkt. Nos. 64 and 95.  The Guarantor's assertion that this "was not
a heavily litigated case," Defs.' Mem. in Opp. to Pl.'s Mot. for
Attorneys' Fees at 16, is therefore rich with irony.

At the same time, however, the litigation in this action
consisted almost entirely of motions practice, without the need
for any depositions or trial testimony, and no novel legal issues
or particularly thorny factual questions were presented.  Indeed,
at bottom, this civil action was a relatively straightforward
commercial dispute and debt collection action, in which Husch
Blackwell represented only a single client.  As such, the
expenditure of almost 950 hours, spread out over 14 attorneys, in
this action strikes the Court as somewhat excessive.  In
recognition of that fact, and in an effort to conform the fee
award to a more reasonable sum, the Court will reduce the
attorneys' fees claimed by AFC by an additional 10%.

### IV.   Conclusion

For all of the above stated reasons, this Court finds that $213,760.50 in attorneys' fees[6] and $3,654.41 in costs, for a total of $217,414.91, is reasonable at this time and will be awarded by an Order to be issued with this Memorandum Opinion.

The Court's Order will further direct counsel for the plaintiff to advise the Court by close of business on Tuesday, August 9, 2011 as to whether AFC wants the Court to enter final judgment in its favor pursuant to Fed. R. Civ. P. 58, or whether it plans to pursue a determination of its bankruptcy fees and costs before the United States Bankruptcy Court and then seek an award of those fees and costs against the guarantor defendants in this Court.

Entered this _3ʳᵈ_ day of August, 2011.


Alexandria, Virginia

                                                    /s/
                                        Leonie M. Brinkema
                                        United States District Judge

---

[6]   This number represents 75% of the $285,014.00 in Husch Blackwell fees that AFC claims; a 15% reduction was applied to eliminate any fees for work performed in the bankruptcy matter, and an additional 10% reduction was applied to account for any unnecessary or duplicative work.